UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| \JOSEPH HARRIS, | ) |
|     Plaintiff, | ) ) ) |
| VS. | )    No. 20-1075-JDT-cgc |
| CAPTAIN COLLET, ET AL., | ) ) ) |
|     Defendants. | ) ) |

ORDER TO MODIFY THE DOCKET,
DISMISSING COMPLAINT, AND GRANTING LEAVE TO AMEND

On January 13, 2020, Plaintiff Joseph Harris, who is presently incarcerated at the South Central Correctional Facility (SCCF) in Clifton, Tennessee,[1] filed a *pro se* complaint under 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis* in the U.S. District Court for the Middle District of Tennessee. (ECF No. 1.) On April 1, 2020, U.S. District Judge William L. Campbell, Jr. granted leave to proceed *in forma pauperis*, assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b), and transferred the case to this district, where venue is proper. (ECF No. 4.) The complaint concerns events that occurred while Harris was previously incarcerated at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee.

---

[1] Harris was incarcerated at the Morgan County Correctional Complex in Wartburg, Tennessee when the complaint was filed. (*See* ECF No. 1 at PageID 2.) The Tennessee Department of Correction Felony Offender Information database shows he is now at the SCCF. *See* www.apps.tn.gov/foil-app/search.jsp. The Clerk is directed to MODIFY the docket to update Harris's address of record and to mail his copy of this order to him at that updated address.

Harris's complaint arises from an incident in August 2019 involving his expression of suicidal thoughts to WCF personnel. (ECF No. 1-1 at PageID 14-15.) Alleging violation of his Eighth Amendment rights, he asserts claims for inadequate medical care and "inadequate housing," contending the Defendants put his life in danger. (ECF No. 1 at PageID 4.) He sues the following Defendants in their individual and official capacities: Captain First Name Unknown (FNU) Collet; Unit Manager Ms. FNU Fuller; Sergeant Ms. FNU Buffer; and Internal Affairs (IA) Officer Ms. FNU Greer; he also sues CoreCivic.[2] (*Id*. at PageID 2-3; ECF No. 1-1 at PageID 16.) He seeks transfer to a different facility[3] and $1 million in compensatory damages. (ECF No. 1 at PageID 5.)

Harris alleges that on August 4, 2019, he hit the emergency call button inside his cell, HB-101, to notify Correctional Officer Gilliam, who is not named as a defendant, "that I was having suicidal thoughts about killing myself and that I needed to speak to medical." (ECF No. 1-1 at PageID 14.) Gilliam contacted the WCF medical office as well as Defendant Collet, who stopped by Harris's cell. (*Id*.) Harris told Collet he was having suicidal thoughts, to which Collet allegedly replied: "[Q]uit playing around and [don't] say shit like that and . . . lay down." (*Id*.) Collet closed Harris's cell door and left without doing anything. (*Id*.) Harris pressed the call button a second time, but Gilliam told him she had called everyone, including the Shift Sergeant, Defendant Buffer, but no one was responding. (*Id*.) The next day, August 5, 2019, Harris alleges that when Collet and a lieutenant came through for inmate counts, Harris and his cellmate were "hanging

---

[2] Harris identifies this Defendant as "CCA (Core Civics of America)." (ECF No. 1-1 at PageID 16.) CCA is an acronym for the former Corrections Corporation of America, now known simply as CoreCivic. *See* www.corecivic.com/news/corrections-corporation-of-america-rebrands-as-corecivic (Oct. 28, 2016). The Clerk is directed to MODIFY the docket to change Defendant CCA to CoreCivic.

[3] As Harris is no longer housed at the WCF, the request for a transfer is moot.

from the bunk." (*Id.*)⁴  Collet and the lieutenant cut down Harris and his cellmate, took pictures, and transported them to the medical office "to be put on suicide watch." (*Id.*)  Harris does not allege any of the named Defendants were in his cell area on August 5, 2019, or that he told anyone what he intended that day. (*Id.*)⁵

Harris further alleges that, "days prior" to August 4, 2019, he filed a grievance that was dismissed or "dropped" because "medical was not grievable." (ECF No. 1 at PageID 7; ECF No. 1-1 at PageID 14.)  He does not describe the specific medical issue raised in that grievance. Harris also alleges he filed a separate emergency grievance on August 16, 2019, complaining that Defendant Fuller, the Unit Manager, refused his request to be moved to a segregated unit because his life was in danger. (ECF No. 1-1 at PageID 15.)  He alleges "being housed in that spot," presumably cell HB-101, put his life in danger. (*Id.*)  Harris further states "all the proper [authorities] and chann[e]ls knew about my situation."  Yet, even after attempting to hang himself, he was placed "right back in danger" in cell HB-101. (*Id.*)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

---

⁴ In response to a question on the § 1983 complaint form about injuries sustained Harris wrote, "I got stabbed, and I ended up hanging myself." (ECF No. 1 at PageID 5.)  Harris does not identify the alleged wrongdoer, describe the circumstances of the stabbing incident, or otherwise explain how it relates to the events of August 4-5, 2019.

⁵ Harris alleges "the same process" took place on August 5, but does not explain what he means by that.  Without further specific allegations, the Court will not assume Harris told any Defendant he was having suicidal thoughts, as he allegedly did the previous day.

3

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Harris filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Harris fails to state a claim upon which relief may be granted, for the reasons explained below.

Defendant CoreCivic is a private company that manages the WCF.[6] Harris's official-capacity claims against the WCF Defendants are also treated as claims against CoreCivic, their employer. However, Harris fails to state a claim against CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). However, the law is settled that actions brought against state actors cannot be maintained under § 1983 on a theory of *respondeat superior*. *See, e.g., Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 659, 691-95 (1978). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). To prevail on a § 1983 claim against CoreCivic, Harris "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011.) Harris does not allege that

---

[6] *See* www.tn.gov/correction/sp/state-prison-list/whiteville-correctional-facility.html ("Whiteville Correctional Facility . . . is managed by CoreCivic, a private corrections management firm.").

a CoreCivic policy or custom was directly responsible for any of the alleged acts and/or omissions he describes.

Harris names IA Officer Greer as a Defendant, but he does not explain his basis for doing so. (ECF No. 1 at PageID 3; ECF No. 1-1 at PageID 14-15.) He does not allege that Defendant Greer took any specific wrongful action. He particularly states claims only as to Defendants Collet, Buffer, and Fuller.

A complaint that fails to allege any action by a defendant necessarily fails to "state a claim for relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. *See also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (ruling that because the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights," the complaint failed to state a claim for relief); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (affirming district court's dismissal of complaint that failed to "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right"). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint," such as Harris has done here, "is not enough to sustain recovery under § 1983." *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)).

Harris's claim of deliberate indifference related to allegedly inadequate medical care, (ECF No. 1 at PageID 3), arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates"); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Under *Estelle*, 429 U.S. at 104,

"deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." To state a claim under the Eighth Amendment, a plaintiff must meet an objective and a subjective component. *Farmer*, 511 U.S. at 834.

To satisfy the objective prong, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). An inmate's "psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Edmonds v. Horton*, 113 F. App'x 62, 64 (6th Cir. 2004) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660-61 (6th Cir. 1994)). Thus, failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. *See*, *e.g.*, *Christy v. Lindamood*, No. 18-0008, 2018 WL 1907447, at *4 (M.D. Tenn. Apr. 23, 2018).

The subjective prong of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297 & 302-03. Thus, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

"[T]here is no general constitutional right of detainees to receive suicide screenings or to be placed in suicide safe facilities, unless the detainee has somehow demonstrated a strong likelihood of committing suicide." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) (citations omitted). However, the Sixth Circuit "has consistently recognized a prisoner's

7

established right to medical attention *once the prisoner's suicidal tendencies are known.*" *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001) (emphasis added) (citing cases). The Eighth Amendment guarantees "a right to medical care for serious medical needs, including psychological needs." *Cooper v. Cnty. of Washtenaw*, 222 F. App'x 459, 464 (6th Cir. 2007) (quoting *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006)). Prison officials violate that right when they are deliberately indifferent to the medical needs of those with known suicidal tendencies. *See id.* at 465. A plaintiff "must show that [each] defendant personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct." *Williams v. Hodge*, No. 3:08-0387, 2009 WL 47141, at *3 (M.D. Tenn. Jan. 7, 2009) (citing *Greene v. Barber*, 310 F.3d 889, 889 (6th Cir. 2002)).

For screening purposes, the Court finds Harris's suicidal thoughts constitute a sufficiently serious medical need for Eighth Amendment purposes.

For Eighth Amendment purposes, however, the complaint fails to make other important allegations. Harris has offered no facts demonstrating a strong likelihood that he would commit suicide or that any Defendant knew of, and deliberately ignored, such likelihood. *See Gray*, 399 F.3d at 616; *Barber v. City of Salem, Ohio*, 953 F.2d 232, 239-240 (6th Cir.. 1992). There is nothing is the complaint suggesting that any Defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]." *Barnet v. Luttrell*, 414 F. App'x 784, 788 (6th Cir. 2011) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). There also is nothing in the complaint suggesting that Harris was suffering from any serious medical, physical, or psychological problems predisposing him to suicidal tendencies or that any Defendant was aware of such. The complaint does not describe any circumstances that would have alerted Defendants to a strong likelihood that Harris would try to commit suicide. In

8

short, no Defendants exhibited unconstitutional deliberate indifference because the record does not show that Harris's "suicidal tendencies [were] known" to them. *See Comstock*, 273 F.3d at 711; *Cooper*, 222 F. App'x at 464.

That Defendants may have reacted other than with instantaneous alarm to Harris's statement about self-harm does not suggest a culpable state of mind. For example, Harris does not allege any Defendant's knowledge that he had suicidal tendencies—other than his isolated August 4, 2019, statement. (ECF No. 1-1 at PageID 14.) Nor does Harris allege any Defendant should have known he had any intention to in fact act upon those thoughts. Even liberally construing the complaint's allegations that Collet and Buffer dismissed Harris's suicidal statements, the conduct described might have been negligent. Indeed, Harris himself expressly labels it as negligence. (ECF No. 1-1 at PageID 15.) But it "did not amount to . . . gross negligence or recklessness amounting to deliberate indifference . . . Negligence does not establish a § 1983 claim." *See Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir.1988).

In fact, according to the complaint, the Defendants undertook efforts to prevent Harris from attempting suicide. After Collet and the lieutenant found Harris and his cellmate on August 5, 2019, they took them to medical, where they were placed on suicide watch. (ECF No. 1-1 at PageID 14.) *See Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 449 (6th Cir. 2014) (finding no deliberate indifference to inmate's mental health needs where he was placed in an "observation cell where he could be closely monitored" after defendants witnessed him drinking from a toilet). *See also Barber*, 953 F.2d at 239 (plaintiffs must allege more than just fitting "a profile of high suicide risk" (citing *Popham v. City of Talladega,* 908 F.2d 1561, 1564 (11th Cir. 1990))). There are no allegations in the complaint from which the Court can plausibly infer either

9

Collet, Buffer, or Fuller was deliberately indifferent to Harris's medical needs. Harris has not met the Eighth Amendment's subjective prong.

None of the circumstances Harris describes are sufficient to allege a violation of his right to receive appropriate medical care for a serious health condition. He therefore does not state an Eighth Amendment claim for deliberate indifference to serious medical needs.

Harris's also contends he was denied adequate housing, apparently a reference to the allegation that Defendant Fuller, the Unit Manager, refused his request to be housed in protective custody because his life was in danger. (ECF No. 1-1 at PageID 14-15.) Harris states even after he attempted to hang himself and even though "all the proper" authorities "and channels knew about my situation," he was "placed right back in danger" in cell HB-101. (*Id.* at PageID 15.)

The Eighth Amendment also encompasses an inmate's right to personal safety. *See Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982). However, though Harris alleges Fuller and other authorities and "channels" knew about the situation, he does not explain that situation in the complaint. Harris fails to set out why he was in danger or from whom,[7] when he asked Defendant Fuller or any other WCF staff to move him to protective custody, or whether the denial of the request resulted in him being harmed by any other person or persons. Harris thus does not adequately allege Fuller acted with "deliberate indifference" to a substantial risk he would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

Harris alleges that prior to August 4, 2019, he filed a grievance for "inadequate medical treatment, putting my life in danger, and deliberate indifference" but the grievance was "dropped"

---

[7] The reason may have something to do with Harris's statement that he was stabbed, but that is not made clear in the complaint.

"because they said medical was no[t] grievable." (ECF No. 1 at PageID 7.)  Harris also alleges he filed an emergency grievance on August 16, 2019, because of Defendant Fuller's refusal to move him to protective custody.  (ECF No. 1-1 at PageID 15.)

If Harris intends to asserts the WCF's grievance procedure itself is insufficient, he has no claim.  "There is no inherent constitutional right to an effective prison grievance procedure." *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)).  A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate.  *Id.*  "[T]here is no constitutionally protected due process right to unfettered access to prison grievance procedures."  *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  Therefore, any allegations concerning the adequacy of WCF's grievance procedure fail to state a claim.

For all of the foregoing reasons, Harris's complaint is subject to dismissal for failure to state a claim on which relief may be granted.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded.").  Leave to amend is not required where a deficiency cannot be cured.  *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds Harris should be given an opportunity to file an amended complaint.

11

In conclusion, the Court DISMISSES Harris's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, Harris is GRANTED leave to file an amended complaint.  Any amendment must be filed **within 21 days after the date of this order.**

Harris is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleadings.  The amended complaint must be signed, must adequately identify all Defendants sued, and must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amendment.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Harris fails to file an amended complaint within the time specified, the Court will dismiss the case in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

                                               s/ **James D. Todd**  
                                               JAMES D. TODD  
                                               UNITED STATES DISTRICT JUDGE